**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **FELIX DAVID VASQUEZ GUZMAN,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. CIV-26-1668-R** |
| **FRED FIGUEROA, et al.,** | ) | |
| **Respondents.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Felix David Vasquez Guzman, a citizen of Venezuela proceeding *pro se*,[1] filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[2] (Doc. 1).[3] United States District Judge David L. Russell referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). (Doc. 7). In accordance with the expedited briefing schedule, (Doc. 8), Respondents timely filed a Response. (Doc. 10). Petitioner timely filed a Reply. (Doc. 11). As fully set forth

---

[1] A *pro se* litigant's pleadings are liberally construed "and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). But the court cannot serve as Petitioner's advocate, creating arguments on his behalf. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[2] Petitioner is housed at Diamondback Correctional Facility in Watonga, Oklahoma. (Doc. 1, at 1).

[3] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

below, the undersigned recommends that the Petition be **GRANTED in part** because Petitioner's detention without a bond hearing violates the Immigration and Nationality Act ("INA"). The Court should order an individualized bond hearing before a neutral Immigration Judge within 7 days of the judgment in this matter, or else release him from custody.

## I. Factual Background

Petitioner is a citizen of Venezuela who entered the United States without inspection on or about December 22, 2021. (Doc. 1, at Ex. 15, at 20). Petitioner states he was detained by ICE and subsequently released into the United States on January 14, 2022. (Doc. 1, at 10). Petitioner states he was re-detained by ICE during an ICE check-in on October 1, 2025, (*id.*), and on October 2, 2025, ICE issued a Notice to Appear, alleging he was an alien present in the United States who had not been admitted or paroled, (*id.* at Ex. 15, at 20). On May 1, 2026, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal. (*Id.* at 2).

Petitioner asserts he "is not aware of any written, reasoned, individualized custody determination explaining what changed or why detention" is now necessary. (Doc. 1, at 11). Respondents assert that Petitioner is subject to mandatory detention under § 1225(b)(2)(A). (Doc. 10, at 1 & n.2). But Respondents also recognize that this matter is controlled by *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026). (*Id.* at 1).

An immigration judge ordered Petitioner's removal on June 26, 2026. EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited Aug. 3, 2026). Petitioner appealed this order to the Board of Immigration Appeals and his

appeal is currently pending. *Id.* Thus, his removal order is not administratively final. 8 U.S.C. § 1101(a)(47)(B) (removal orders become administratively final upon the earlier of "(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals").

## II. Petitioner's Claims and Respondents' Responses

Petitioner makes the following claims in support of his Petition:

1. His prolonged detention violates due process because he has not received a "written individualized decision explaining why detention became necessary" and he does not have a final removal order. (Doc. 1, at 6, 11).

2. His "[r]e-detention after years of compliance was arbitrary" and violates both due process and the *Accardi* doctrine. (*Id.* at 6).

3. His "[c]ontinued detention is excessive in light of medical and family circumstances." (*Id.*)

As relief Petitioner requests immediate release from custody or, alternatively, a "prompt, constitutionally adequate individualized custody review before a neutral decision maker, at which the Government bears the burden to prove by clear and convincing evidence that continued physical detention is necessary and that no less restrictive alternatives would suffice." (Doc. 1, at 12). Additionally, while framed as an independent ground for relief,

Petitioner requests that the Court prohibit his removal[4] or transfer[5] during the pendency of this action. (*Id*. at 7, 11; Doc. 4).

---

[4] Federal law strips federal district courts of jurisdiction to consider "any cause or claim by or on behalf of any alien arising from the decision or action by [the Department of Homeland Security ("DHS")] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). In the Tenth Circuit, a court must review whether a habeas petitioner's claims are "connected directly and immediately with a decision or action by the Attorney General" to commence proceedings, adjudicate cases, or execute removal orders. *Tsering v. U.S. Immigr. & Customs Enf't*, 403 F. App'x 339, 343 (10th Cir. 2010). An order by this Court prohibiting Petitioner's removal would directly relate to a decision to execute removal orders. *See Olola v. U.S. Att'y Gen*., No. 18-CV-00058, 2018 WL 11446892, at *3 (D. Colo. Feb. 22, 2018) ("Federal law unambiguously strips federal district courts of jurisdiction to stay or enjoin an alien's removal.") (citation modified); *see also, e.g., Makuey v. Scott*, No. 2:26-CV-00632, 2026 WL 925647, at *4 (W.D. Wash. Apr. 6, 2026) (holding the court lacks jurisdiction to stay petitioner's removal under § 1252(g)); *Hernandez Llanes v. Warden, Fla. Soft Side Det. Ctr*., No. 2:26-CV-1030, 2026 WL 925615, at *2 (M.D. Fla. Apr. 6, 2026) (same). Accordingly, § 1252(g) strips the Court of jurisdiction to consider Petitioner's request to prohibit his removal.

[5] Under 8 U.S.C. § 1252(a)(2)(B)(ii), "no court shall have jurisdiction to review any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." *Id*. (citation modified). The decision regarding where to detain noncitizens awaiting removal proceedings is a discretionary power of the Secretary of DHS. Under 8 U.S.C. § 1231(g)(1), ICE "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." The Tenth Circuit has confirmed "the Attorney General is mandated to arrange for appropriate places of detention for [persons] detained pending removal." *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding in a civil rights lawsuit "a district court has no jurisdiction to restrain the Attorney General's power to transfer [ICE detainees] to appropriate facilities by granting injunctive relief"). Accordingly, § 1252(a)(2)(B)(ii) also bars judicial review of any decision by Respondents to transfer Petitioner to another ICE facility. *See, e.g.*, *Lway Mu v. Whitaker*, 18-cv-06924, 2019 WL 2373883, at *5 (W.D.N.Y. June 4, 2019) (citing § 1231(g)(1) and concluding "it does not have the authority to dictate to DHS where Petitioner should be housed"); *Olola*, 2018 WL 11446892, at *4 (finding § 1252(a)(2)(B)(ii) and § 1231(g) preclude judicial review of respondents' decision to transfer a noncitizen and "decisions to transfer an alien from one location to another are within the discretion of the Attorney General and therefore may not be reviewed or

While Respondents contend that Petitioner is held under 8 U.S.C. § 1225(b)(2)(A) and is not entitled to a bond hearing, they concede that the Tenth Circuit's recent decision in *Santillan Quiroz*, 180 F.4th 1226, "control[s]" this matter. (Doc. 10, at 1). "Respondents request that any order be limited to ordering the Respondents to provide a bond hearing within seven days." (*Id.*) They state "[t]here is no reason to consider additional arguments for a bond hearing if the Court is ordering a hearing based on the statutory claim." (*Id.*)

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Analysis

### A. Under *Santillan Quiroz v. Mullin*, Petitioner Is Entitled To a Bond Hearing.

In order for the Court to determine whether Petitioner's current detention without a bond hearing violates the law, the Court must first determine what statute controls his detention. Under the INA, detention of aliens who are "applicants for admission"[6] and

---

enjoined by the federal district courts"). Therefore, the undersigned concludes the Court does not have jurisdiction to prohibit Petitioner's transfer to another ICE facility.

[6] 8 U.S.C. § 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id*. § 1101(a)(13).

"seeking admission" is mandatory under 8 U.S.C. § 1225(b)(2)(A). By contrast, § 1226(a) provides for the arrest of aliens on a warrant and grants ICE the discretion to continue detention of the alien or to release the alien on bond.[7]

On June 30, 2026, the Tenth Circuit decided *Santillan Quiroz,* holding "that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)." 180 F.4th at 1237. The court reasoned based on the statutory text and context that

> once a noncitizen has entered unlawfully, no amount of legal maneuvering allows him to go back in time and make his initial entry lawful. The only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border. Since § 1225(b)(2)(A) applies only to those seeking admission, § 1225(b)(2)(A) is likewise limited to the border.

*Id*. at 1239. This statutory interpretation is binding on this Court and applicable to Petitioner's factual circumstances.

That Petitioner has made an application for asylum does not render him "seeking admission" and thereby subject to § 1225(b)(2)(A). This is because "a noncitizen is 'seeking admission' when he takes some kind of ongoing action to request lawful entry into the United States." *Id.* at 1238. But "those who entered the United States without

---

[7] The regulations accompanying the statute explain the various levels of review for a bond determination. An ICE officer makes the initial detention or release determination, and the alien bears the burden of "demonstrat[ing] to the satisfaction of the officer that . . . release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). If the officer determines the alien should be detained, the alien can seek review of that decision at a bond hearing before an immigration judge. *Id*. § 236.1(d)(1). An immigration judge's decision to detain may be further appealed to the Board of Immigration Appeals ("BIA"). *Id*. § 236.1(d)(3).

admission and who have lived here since are categorically unable to seek admission while they remain in the country" because "a person cannot make a present request for permission to enter the United States, lawfully or otherwise, once he or she has already entered." *Id.* at 1239 (citation modified). And while "a noncitizen can request legal status even after he has entered the United States unlawfully," "he cannot request admission after the fact." *Id.* Thus, Petitioner's post-entry attempt to seek legal status does not make detention proper under § 1225(b)(2)(A).

Based on the Tenth Circuit's decision in *Santillan Quiroz*, the undersigned concludes that Petitioner, who was detained in the interior of the United States after entering without admission, is subject to detention under § 1226(a). However, he has not been granted the bond hearing provided in that statute. Thus, Petitioner has shown that he is in custody in violation of the laws of the United States, and he is entitled to habeas relief. 28 U.S.C. § 2241(c)(3). A bond hearing is the appropriate remedy. *Santillan Quiroz*, 180 F.4th at 1251 n.13.

**B. The Court Should Decline to Reach Due Process or Burden Shifting.**

Petitioner asserts that his detention without a bond hearing violates due process as well as the INA, and also argues that the government should be required to bear the burden of proof at a bond hearing. (Doc. 1, at 6, 11-12). "[U]nder current BIA precedent, a noncitizen detained under section 1226(a) must demonstrate to the satisfaction of the Immigration Judge that he or she merits release on bond, even though section 1226(a) does not explicitly contain such a requirement. To do so, the noncitizen must prove that he or she is neither a danger to the community nor a flight risk." *Hernandez-Lara v. Lyons*, 10

F.4th 19, 27 (1st Cir. 2021) (citation modified). The majority of Judges in this District have either (a) declined to reach the issue of whether due process requires the government, rather than the non-citizen, to carry the burden of proving dangerousness or flight risk at a § 1226(a) bond hearing[8] and/or (b) determined that due process does not require the burden to shift to the government.[9] Acknowledging these decisions and in the interests of judicial economy, the undersigned recommends that the Court decline to address the issue.[10]

---

[8] *See e.g.*, *Velazquez v. Johnson*, No. CIV-26-1111-J, 2026 WL 1999247, at *1 (W.D. Okla. July 10, 2026) (Judge Jones declining to address petitioner's due process claim and finding that the burden-shifting issue "is premature and not fit for adjudication at this stage"); *Karimov v. Grant*, No. CIV-26-639-J, 2026 WL 1493969, at *1 (W.D. Okla. May 28, 2026) (same where no party objected to the recommendation for burden shifting); *Tabares Martinez v. Grant*, No. CIV-26-545-SLP, 2026 WL 1908094, at *2 (W.D. Okla. July 2, 2026) (Chief Judge Palk declining, without comment, to adopt the recommendation for burden shifting); *Rangel v. Mullin*, No. CIV-26-568-D, 2026 WL 1625653, at *2 n.2 (W.D. Okla. June 5, 2026) (Judge DeGiusti "declin[ing] to place the burden on the government to justify Petitioner's detention pending removal proceedings."); *Singh v. Figueroa*, No. CIV-26-600-R, 2026 WL 1181699, at *1 n.2 (W.D. Okla. Apr. 30, 2026) (Judge Russell "declin[ing] to specify or alter the burden of proof at this stage.") (citation omitted).

[9] *See e.g.*, *Adediran v. Figueroa*, No. CIV-26-801-J, Doc. 15, at 5 (W.D. Okla. July 24, 2026) ("Absent binding authority resolving this issue, and because Petitioner's request would substantially alter the existing framework, the Court declines to hold on this limited record that due process requires a different procedure."); *Pupo Socarras v. Figueroa*, No. CIV-26-0571-HE, 2026 WL 2100499, at *1 (W.D. Okla. July 21, 2026) ("[T]he Fifth Amendment Due Process clause is not offended by leaving the burden of proof on the non-citizen in a § 1226(a) bond hearing."); *Toro v. Mullin*, CIV-26-315-JD, Doc. 19, at 18 (W.D. Okla. May 12, 2026) ("Balancing all three factors, the Court agrees with the Fourth and Ninth Circuits in concluding that, at least on the facts of this case, § 1226(a)'s existing bond procedures supply adequate process.").

[10] The undersigned has routinely recommended, on due process grounds, ordering a bond hearing that requires the government to prove dangerousness or risk of flight by clear and convincing evidence. *See, e.g.*, *Velazquez v. Johnson*, No. CIV-26-1111-J, Doc. 11, at 6-19 (W.D. Okla. July 2, 2026). In the absence of authority from the Supreme Court or the Tenth Circuit, the undersigned continues to find the First and Second Circuit's rulings on the issue persuasive, while acknowledging the well-reasoned approach of members of this

## V. Recommendation and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition (Doc. 1) be **GRANTED in part**. The undersigned recommends that the Court order Respondents to provide Petitioner an individualized bond hearing before a neutral Immigration Judge within 7 days of the judgment in this matter, or else release him from custody. The undersigned further recommends that Petitioner's motion for a temporary restraining order (Doc. 4) prohibiting his removal or transfer be **DENIED**. *See supra*, notes 4 & 5.

**The Court advises the parties of their right to object to this Report and Recommendation by August 11, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[11] The Court advises the parties that failure to make timely objection to this report

---

Court. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 39-40 (1st Cir. 2021) (holding that at a § 1226(a) bond hearing, due process requires the government to bear the burden of proving the alien's dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence); *Velasco Lopez v. Decker*, 978 F.3d 842, 855-57 (2d Cir. 2020) (holding that when an alien is subject to prolonged incarceration under § 1226(a), the appropriate remedy is a bond hearing at which the government bears the burden of proving dangerousness or flight risk by clear and convincing evidence).

The undersigned additionally determines it is unnecessary to address Petitioner's remaining claims given the recommendation that his INA claim be granted.

[11] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to Report and Recommendations. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every

and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge and terminates the referral unless and until the matter is re-referred.

**ENTERED** this 4th day of August, 2026.

Amanda L. Maxfield
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

instance – particularly where strict application would undermine the habeas review process.").